<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **ELLIOT REED, MICHALE ASTA,** : | |
| **individually and on behalf of** : | |
| **others similarly situated,** : | |
| : | |
| **Plaintiffs,** : | |
| : | **Civil Action No. 14-896 (ES)(MAH)** |
| **v.** : | |
| : | **OPINION AND ORDER** |
| **THE SWATCH GROUP (US), INC.,** : | |
| : | |
| **Defendants.** : | |
| : | |

**SALAS, DISTRICT JUDGE**

This matter comes before the Court on Defendant The Swatch Group (US), Inc.'s,

("Defendant") motion to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure

12(b)(6). (D.E. No. 12). Plaintiffs include Elliot Reed, Michael Asta, and any similarly situated

individuals (collectively "Plaintiffs"). The Court has considered the parties' submissions and

decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For

the reasons below, the Court GRANTS Defendant's motion to dismiss.

**I.    Factual Background and Procedural History**

On October 8, 2013, Plaintiff Elliot Reed made a purchase at Defendant's store at Swatch

Garden State Plaza in New Jersey. (D.E. No. 1, Complaint, ("Compl.") ¶ 23). Reed paid with his

American Express credit card and "received from Defendant an electronically-printed receipt that

displayed the expiration date of [Reed's] American Express credit card." (*Id.*). Similarly, on

October 16, 2013, Plaintiff Michael Asta made a purchase at Defendant's store at Swatch Times

Square in New York.  (*Id.* ¶ 24).  Asta paid with his American Express credit card and likewise, his receipt displayed the expiration date of his credit card.  (*Id.*).

On November 23, 2013, the Plaintiffs brought this consumer class action on behalf of themselves and others who, on or after June 3, 2008, made purchases at retail locations operated by the Defendant and were provided with a printed receipt that displayed the expiration date of the their credit or debit card.  (*See* D.E. No. 1).  Plaintiffs assert that by not truncating the expiration date from the receipt, Defendant violated the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act, 15 U.S.C. §1681, *et seq.*, as amended (the "FCRA").  (Compl. ¶ 1).  Plaintiffs also allege that Defendant's actions violated N.J. Stat. Ann. §56:11-42 (West 2014), a New Jersey statute with provisions similar to FACTA's.  (*Id.* ¶ 29).

On May 7, 2014, Defendant filed this motion to dismiss.  (*See* D.E. No. 12-1, Memorandum of Law in Support of Defendant's Motion to Dismiss, ("Def. Mov. Br.")).  Plaintiffs filed their opposition on June 23, 2014.  (D.E. No. 16, Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss Class Action Complaint, ("Pl. Opp. Br.")).  Defendant replied on July 14, 2014.  (D.E. No. 19, Reply Memorandum of Law in Further Support of Defendant's Motion to Dismiss, ("Def. Reply. Br.")).  The motion is now ripe for resolution.

## II.    Standard of Review

Fed. R. Civ. P. 8(a)(2) requires a complaint to set forth "a short and plain statement of the claim showing that a pleader is entitled to relief."  The pleading standard announced by Rule 8 does not require detailed factual allegations; however, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).  In addition, the plaintiff's short and plain statement of the claim must "give

the defendants fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citation omitted).

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Furthermore, "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245 (citation omitted).

## III.   Discussion

### A.  FACTA claim

In considering the instant motion to dismiss, the narrow issue before the Court is whether the Complaint sufficiently alleges that Defendant willfully violated FACTA.  The Court finds that

Plaintiffs failed to allege sufficient facts to assert a willful violation, and dismisses Plaintiffs' FACTA claim *without prejudice*.

In 2003, Congress amended the FCRA by enacting FACTA. *See* Pub. L. No. 108-159, 117 Stat. 1952 (2003). Congress's purpose for enacting the FCRA and FACTA was to thwart identity theft from the use of information on discarded credit card receipts. *See* Credit and Debit Card Receipt Clarification Act of 2008, Pub. L. No. 110-241, §2, 122 Stat. 1565 (June 3, 2008). Among other things, FACTA prohibits a person that accepts credit cards from printing the credit card's expiration date on the customer's receipt. *See* 15 U.S.C. §1681c(g)(1) ("[N]o person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt  provided to the cardholder at the point of the sale or transaction.").

Additionally, FACTA subjects persons in violation of section 1681c(g) to civil liability, and the available remedy depends on whether the violation was negligent or willful. When the violation is merely negligent, a plaintiff may recover only actual identity theft damages. 15 U.S.C. § 1681o(a)(1). When the violation is willful, a plaintiff may elect to recover either actual damages (if suffered) or statutory damages between $100 and $1,000. § 1681n(a)(1)(A). Thus, if a plaintiff sustains no actual damage for identity theft, the plaintiff must allege that defendant's violation was willful. *See Id.*; *Dover v. Shoe Show, Inc.*, No. 12-694, 2013 WL 1748337, at *3 (W.D. Pa. Mar. 19, 2013). Here, because Plaintiffs have not alleged actual injury, they must adequately plead willfulness. *Dover,* 2013 WL at *3.

For a violation of section 1681c(g) to have been "willful," the defendant's violation must have been knowing or reckless. *See Long v. Tommy Hilfiger U.S.A.*, 671 F.3d 371, 376 (3d Cir. 2012) (citing *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57–58 (2007)). "The term wilful [sic]

means an omission or failure to do an act . . . voluntarily and knowingly with a purpose [to] disobey or disregard of the law, or with reckless disregard of a known statutory duty under the Fair Credit Reporting Act." *Price v. Trans Union, L.L.C.*, 839 F. Supp. 2d 785, 808 (E.D. Pa. 2012). Recklessness implicates "an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Safeco*, 551 U.S. at 68 (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). It is the "high risk of harm, objectively assessed, that is the essence of recklessness at common law." *Id.* at 69.

Defendant argues that Plaintiffs failed to allege a willful violation because Plaintiffs provide a single conclusory allegation of willfulness. (Def. Mov. Br. at 6). Additionally, the facts alleged by Plaintiffs to show willfulness are general in nature, and not specific to Defendant itself. (*Id.* at 6–7). Plaintiffs counter that the Complaint contains sufficient facts from which the Court may infer that Defendant's violation was willful. (Pl. Opp. Br. at 21–22). First, Congress enacted FACTA in 2003, requiring the truncation of credit card expiration dates on receipts by December 4, 2006, and in 2008 FACTA was amended to extend the grace period until June 3, 2008. (Compl. ¶¶ 16–22). Thus, "Defendant had many years to comply with FACTA." (*Id.* ¶ 32). Second, the Complaint alleges that credit card companies "advised *merchants* of the need to truncate card numbers and expiration dates on electronically printed receipts." (*Id.* ¶ 27) (emphasis added). Additionally, credit card companies "contractually required *merchants* accepting credit cards to truncate . . . ." (*Id.* ¶ 28) (emphasis added).

In essence, Plaintiffs' argument is that because Defendant had a long time to comply with FACTA, and because credit card companies advised and required all merchants to comply, Defendant must have been aware of FACTA's truncation requirement. Plaintiffs argue that, based on these facts, it is plausible to infer that Defendant's violation was willful.

However, Plaintiffs neither assert nor show that this Defendant in particular actually received, reviewed, or was otherwise made familiar with FACTA's requirements.  Nothing in Plaintiffs' Complaint gives rise to the inference that Defendant knew the law prohibited its conduct.[1]  Additionally, the fact that credit card companies advised *merchants* of FACTA's requirements is in no way specific to Defendant, and such a generalized fact "could be alleged against *any* alleged FACTA violator, and as such [it is] essentially boilerplate."  *See Gardner v. Appleton Baseball Club, Inc.*, No. 09-705, 2010 WL 1368663, at *6 (E.D. Wis. Mar. 31, 2010) (emphasis in original).

Moreover, our sister district courts have found such generalizations insufficient to allege willfulness under the dictates of *Iqbal*.  *See, e.g.*, *Komorowski v. All-Am. Indoor Sports, Inc.*, No. 13-2177, 2013 WL 4766800, at *4 (D. Kan. Sept. 4, 2013) (dismissing FACTA claim when plaintiff alleged that defendant should have known FACTA's requirements given the time it had to comply and the substantial publicity surrounding FACTA); *Huggins v. SpaClinic, LLC*, No. 09-2677, 2010 WL 963924, at *2 (N.D. Ill. Mar. 11, 2010) (dismissing a FACTA claim when plaintiff alleged that "FACTA's requirements were well-publicized and that credit card companies required compliance with the statute," since these allegations were "not specific to the defendant"); *cf. Steinberg v. Stitch & Craft, Inc.*, No. 09-60660, 2009 WL 2589142, *2–3 (S.D. Fla. 2009) (denying dismissal when plaintiff alleged credit card companies had "notified the merchants, including the Defendant," of FACTA's requirements, and that Defendant violated FACTA because it "did not wish to incur the additional expense of reprogramming or updating its point of sale equipment.").

---

[1] Plaintiffs allege that "[a]s of October 8, 2013, Defendant was aware" of FACTA's truncation requirement.  (Compl. ¶ 26).  But under *Iqbal*, such conclusory allegations must be struck and ignored.  *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

In opposition, Plaintiffs cite a legion of cases where district courts have found seemingly similar allegations to be sufficient.  But these cases are distinguishable for two main reasons.

First, many of these cases predate *Iqbal* and rely on "formulaic recitation of the elements of a cause of action" which under *Iqbal*, "will not do."  *Iqbal*, 556 U.S. at 678.  For instance, Plaintiffs cite *Miller v. Sunoco, Inc.*, where the court denied a motion to dismiss when a plaintiff alleged that the defendant continued issuing receipts without truncating in violation of FACTA despite having three years to comply, and that credit card companies advised merchants of FACTA requirements.  *Miller v. Sunoco, Inc.*, No. 07-1456, 2008 WL 623806, at *6–7 (E.D. Pa. Mar. 4, 2008).

However, post-*Iqbal* courts have continually rejected barebone allegations based on generalized knowledge—even claims similar to *Miller*.  For instance, in *Huggins*, a plaintiff alleged that defendant's violation was willful because defendant had considerable time to comply, FACTA's requirements were well publicized, and credit card companies required compliance with the statute.  *Huggins*, 2010 WL 963924, at *2.  The court, relying on *Iqbal*, granted dismissal stating that such generalized knowledge and publicity were "not specific to the defendant."  *Id.*; *see also Kmorowski*, 2013 WL 4766800, at *3 ("Merely alleging that a defendant should be aware of a statute and fails to comply with it, as Plaintiffs have done here, is insufficient to state a claim for willfulness."); *Gardner*, 2010 WL 1368663, at *4–5 (E.D. Wis. Mar. 31, 2010) (dismissing complaint and declining to follow pre-*Iqbal* decisions that relied on similar generalized facts rather than specific allegations touching the defendant).

Second, the remaining cases are clearly distinguishable in that unlike the Complaint here, those complaints contained specific allegations that the defendants had been informed of FACTA's requirements, which defendants then disregarded.  In *Dover*, for example, the plaintiff alleged not

7

only that that there was substantial publicity surrounding FACTA compliance, but specifically that defendant itself was made aware of its compliance obligation by VISA manuals and guidelines. *Dover*, 2013 WL 1748337, at *3; *see also Sanders v. W & W Wholesale Inc.*, No. 11-3557, 2011 WL 4840978, at *2 (N.D. Ill. Oct. 12, 2011) (inferring willfulness because defendant was "made aware of FACTA's requirements by the company that provided [defendant] with the point-of-sale credit card terminals" and, in order to print expiration dates on receipts, defendant entered a special code). Thus, the case law cited by Plaintiffs is without weight.

Finally, Plaintiffs argue that "[i]ssues concerning defendant's state of mind, such as knowledge or willfulness, should not be resolved on a 12(b)(6) motion to dismiss." (Pl. Opp. Br. at 22). Indeed, under a motion to dismiss pursuant to 12(b)(6) the Court does not decide factual issues and takes Plaintiffs' well-pleaded factual allegations as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009). But this axiom does not mean that Plaintiffs can sidestep *Iqbal's* requirement that for a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Here, Plaintiffs' Complaint plainly fails to set forth sufficient factual matter to allow this Court to make the reasonable inference that Defendant willfully violated FACTA. Therefore, the Court dismisses Plaintiffs' FACTA claim *without prejudice* so that Plaintiffs may better allege his case.

### B. N.J. Stat. Ann. § 56:11-42 Claim

Plaintiffs also seem to allege, through a single paragraph in the Complaint, that Defendant violated N.J. Stat. Ann. § 56:11-42 (the "NJ Truncation Law"). (*See* Compl. ¶ 29). The New Jersey legislature enacted this statute in 2002. *See* 2002 N.J. Sess. Law Serv. Ch. 101 (West). Similar to FACTA, the NJ Truncation Law prohibits retailers from displaying "more

than the last five digits of a customer's credit card number or the expiration date of the credit card upon any sales receipt provided at the point of sale to the customer," except when the receipt is handwritten.  N.J. Stat. Ann. § 56:11-42.  Moreover, the NJ Truncation Law provides that "[t]he Attorney General of the State of New Jersey shall adopt those rules and regulations pursuant to the 'Administrative Procedures Act' necessary to effectuate the purpose of this act." N.J. Stat. Ann. § 56:11-43.

Both parties argue that the language of the NJ Truncation Law is similar to FACTA, and therefore, if they succeed under the FACTA claim, they also succeed under this claim.  (*See* Def. Mov. Br. at 11 ("Given that the language of this 'baby FACTA' statute mirrors FACTA, the interpretation of N.J. Stat. 56:11-42 also would follow the interpretation of FACTA  as  set forth above."); *cf.* Pl. Opp. Br. at 23 ("As Plaintiffs have asserted a viable claim under FACTA, they also have asserted one under N.J.S.A. 56:11-42.")).

However, the Court cannot discern any enforcement provision for this statute.  No reported case law exists.  More importantly, no regulation exists.  Although section 43 provides the Attorney General of New Jersey with the authority to "adopt those rules and regulations . . . necessary to effectuate the purposes of this act," it appears no such rules or regulations have been adopted.[2]

---

[2] It is unclear whether the NJ Truncation Law is part of the New Jersey Fair Credit Reporting Act ("NJ FCRA"), N.J. Stat. Ann. § 56:11-28, *et seq.*, which was enacted in 1997.  Reported New Jersey court decisions cite the NJ FCRA to include the NJ Truncation Law.  *See, e.g., Kent Motor Cars, Inc. v. Reynolds & Reynolds, Co.*, 25 A.3d 1027, 1043 (N.J. 2011) ("New Jersey Fair Credit Reporting Act, *N.J.S.A.* 56:11-28 to -52[.]"); *Vanz, LLC - Mar. 10 Series 02 v. Simon*, No. 2650-103, 2012 WL 2160184, at *1 (N.J. Super. Ct. App. Div. June 15, 2012) ("[T]he New Jersey Fair Credit Reporting Act, *N.J.S.A.* 56:11-28 to -52[.]").  However, the NJ Truncation Law did not amend the NJ FCRA. *See* 2002 N.J. Sess. Law Serv. Ch. 101 (West).  More importantly, the NJ Truncation Law did not provide that violators would be liable under N.J. Stat § 56:11-38 or -39, the NJ FCRA's liability provisions.  This is striking, given that in 2005 the New Jersey Legislature enacted the Identity Theft Prevention Act ("ITPA"), N.J. Stat. Ann. § 56:11-44 to -52, which expressly stated that it amended the NJ FCRA.   *See* Identity Theft Prevention Act, 2005 N.J. Sess. Law Serv. Ch. 226 (West) ("AN ACT . . . amending P. L. 1997, c. 172 and supplementing various parts of the statutory law.").  Moreover, the ITPA also expressly states that violators of its provisions are subject to liability under the NJ FCRA.  *See* N.J. Stat. Ann. § 56:11-50.  Thus, the Court is convinced that the New Jersey Legislature did not intend to make the NJ Truncation Law enforceable through the NJ FCRA liability provisions.  Rather, the language in section 43 makes it clear that it was up to the Attorney General to adopt such regulations as necessary to effectuate the act. Since no such regulations exist, the NJ Truncation Law has no enforcement provision.

Thus, it appears that no private right of action exists as the law currently stands, and Plaintiffs have not pointed to anything suggesting otherwise.[3]  Therefore, Plaintiffs' N.J. Stat. Ann. § 56:11-42 claim is dismissed *without prejudice*.

## IV.   Conclusion

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss.  Plaintiffs' FACTA claim is dismissed *without prejudice*.  Plaintiffs' N.J. Stat. Ann. § 56:11-42 is dismissed *without prejudice*.  Plaintiff shall have thirty days to file an amended complaint to cure the deficiencies noted above.

s/*Esther Salas*
**Esther Salas, U.S.D.J.**

---

[3] Presently, there is pending legislation amending N.J. Stat. Ann. §56:11-42 to include a civil penalty for violators. *See* 2014 Bill Text NJ S.B. 972.