Jeffrey W. Herrmann, Esq.
Cohn Lifland Pearlman Herrmann & Knopf LLP
Park 80 West-Plaza One
250 Pehle Avenue | Suite 401
Saddle Brook, New Jersey 07663
(201) 845-9600

and

Jack T. Spinella, Esq.
ND&S  NICOLL DAVIS & SPINELLA LLP
95 Route 17 South, Suite 316
Paramus, New Jersey 07652
(201) 712-1616
Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ELLIOT REED, MICHAEL ASTA, individually and on behalf of others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> THE SWATCH GROUP (US), INC., a Delaware corporation <br><br> Defendant. | Civil Action Number: 14-cv-00896(ES)MAH) <br><br><br> **FIRST AMENDED <br> CLASS ACTION COMPLAINT <br> and JURY DEMAND** |

Plaintiffs, ELLIOTT REED, residing at 10225 Sand Cay Lane, City of West Palm Beach, State of Florida, and MICHAEL ASTA, residing at 400 East 66th Street, Apartment 2B, City of New York, State of New York (collectively "Plaintiffs"), individually and as representatives of all similarly situated, by and through their attorneys, Cohn Lifland Pearlman Herrmann & Knopf LLP and Nicoll Davis & Spinella LLP, states as follows for their Class Action Complaint against Defendant THE SWATCH GROUP (US), INC. ("Defendant").

### *Nature of Action*

1. This is a consumer class action based upon Defendant's violations of the Fair and Accurate Credit Transactions Act ("FACTA") amendment to Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq., as amended* (the "FCRA"). Specifically, this action is based on Section 1681c(g) of the FCRA. This section of the FCRA, like many others, was designed to combat the rampant increase of identity theft throughout the nation in recent years. Under the FCRA, companies that accept credit and debit cards are required to restrict the information they print on sales receipts.  Such a practice, if followed, reduces an identity thief's ability to obtain valuable account information relating to a consumer. Despite the simple steps necessary to comply, and despite abundant notice, Defendant simply chose to ignore compliance with the FCRA. As such, consumers who purchase goods and services from Defendant receive none of the benefits that Section 1681c(g) was designed to confer, and are uniformly burdened with an elevated risk of identity theft.

### *Jurisdiction and Venue*

2. Jurisdiction of this Court arises under 15 U.S.C. § 1681, 28 U.S.C. §§1331 and 1337.

3. Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b) because the unlawful practices alleged herein took place within the District of New Jersey.

### *Parties*

4. Plaintiff, Elliott Reed is an individual who resides at 10225 Sand Cay Lane, City of West Palm Beach, State of Florida.  The Plaintiff is a consumer as defined by 15 U.S.C. § 1681a(c) of the FCRA.  The Plaintiff seeks to represent a class of consumers as defined by 15 U.S.C. § 1681a(c).

5. Plaintiff, Michael Asta is an individual who resides at 400 East 66th Street, Apartment 2B, City of New York, State of New York. The Plaintiff is a consumer as defined by 15 U.S.C. § 1681a(c) of the FCRA. The Plaintiff seeks to represent a class of consumers as defined by 15 U.S.C. § 1681a(c).

6. Defendant The Swatch Group (US), Inc., is a Delaware corporation, doing business as Swatch and conducts business at Swatch Garden State Plaza, Route 4 & 17, Space D2, Paramus, New Jersey 07652.

7. At all relevant times, Defendant was a "person who accepts credit cards or debit cards for the transaction of business" and as such is a "person" as defined by 15 U.S.C. § 1681a(g).

### *Class Action Allegations*

8. Plaintiffs bring this action individually and on behalf of the following putative Class: All persons to whom Defendant provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring after June 3, 2008, which receipt displayed the expiration date of the person's credit or debit card ("Class").

9. The Class is so numerous that joinder of all individual members in one action would be impracticable. On information and belief, there are more than 100 persons to whom Defendant provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring after June 3, 2008, which receipt displayed the expiration date of the person's credit or debit card.

10. Plaintiffs' claims are typical of the claims of the Class members. All are based on the same legal theories and arise from the same unlawful and willful conduct.

11. There are common questions of law and fact affecting members of the Class,

3

which common questions predominate over questions that may affect individual members. These common questions include, but are not limited to:

    a.    Whether Defendant had a practice of providing consumers with electronically printed receipts on which Defendant printed the expiration dates of consumers' credit or debit cards; and

    b.    Whether Defendant thereby willfully violated FACTA.

12. Plaintiffs will fairly and adequately represent the Class members. Plaintiffs have no interests that conflict with the interests of Class members. Plaintiffs have retained counsel experienced in handling consumer class actions. Neither Plaintiffs nor their counsel have any interests that might cause them not to pursue this claim vigorously.

13. This action should be maintained as a class action because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual members that would establish incompatible standards of conduct for the parties opposing the Class.

14. Whether Defendant failed to comply with 15 U.S.C. § 1681c(g) can be easily determined by a review of its policies and a ministerial inspection of its business records.

15. A class action is a superior method for the fair and efficient adjudication of this controversy. Management of the Class claims is likely to present significantly fewer difficulties than those presented in many individual claims. Moreover, the identities of the Class members may be obtained from Defendant's records, rendering identification of the class something capable of ministerial review.

## FIRST CAUSE OF ACTION

### For Violation of 15 U.S.C. §§ 1681 *et seq.*
### (On Behalf of Plaintiffs and the Members of the Class)

### *Background*

16. Plaintiffs hereby incorporate by reference the allegations contained above paragraphs of this Compliant as if fully set forth herein.

17. In 2003, FACTA was enacted to bolster protections for consumers from identity theft.

18. FACTA, 15 U.S.C. § 1681c(g) provides as follows:

> Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last *5* digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.

19. § 1681c(g) applies to any "device that electronically prints receipts" ("Devices") for point of sale transactions.

20. Devices first put into use after January 1, 2005 must have been immediately compliant with 15 U.S.C. § 1681c(g).

21. Devices first put into use prior to January 1, 2005 must have complied with 15 U.S.C. § 1681c(g) by December 4, 2006.

22. FACTA gave merchants who accept credit or debit cards up to three years to comply with its requirements, requiring full compliance with its provisions no later than December 4, 2006.

23. On June 3, 2008, FACTA was amended to provide that

> any person who printed an expiration date on any receipt provided to a consumer cardholder at a point of sale or transaction between December 4, 2006 and June 3, 2008, but otherwise complied with the requirements of section 1681c(g) of this title for such receipt shall not be in willful

5

>noncompliance with section 1681c(g) of this title by reason of printing such expiration date on the receipt.

15 U.S.C. § 1681n(d).

24. On October 8, 2013, Plaintiff, Elliott Reed made a purchase at Defendant's store at Swatch Garden State Plaza, Route 4 & 17, Space D2, Paramus, New Jersey 07652. To pay for the purchase, Plaintiff, Elliott Reed used his American Express credit card. Following the transaction, Plaintiff, Elliott Reed received from Defendant an electronically-printed receipt that displayed the expiration date of Plaintiff's American Express credit card.

25. On October 16, 2013, Plaintiff, Michael Asta made a purchase at Defendant's store at Swatch Times Square, 1528 Broadway, New York, New York 10036. To pay for the purchase, Plaintiff, Michael Asta used his American Express credit card. Following the transaction, Plaintiff, Michael Asta received from Defendant an electronically-printed receipt that displayed the expiration date of Plaintiff's American Express credit card.

26. At all relevant times, Defendant used Devices for point of sale transactions

27. Defendant, at the point of a sale or transaction with members of the class, provided each member of the class with one or more electronically printed receipts on each of which Defendant printed, for each respective class member, the expiration date of such member's credit or debit card.

28. On or after June 3, 2008, Defendant provided Plaintiffs and Class members receipts that failed to comply with 15 U.S.C. § 1681c(g).

29. At all times pertinent hereto, Defendant acted by and through its agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant.

***Industry Knowledge Regarding the***

### *Truncation of Credit/Debit Card Account Information*

30. In early 2003, the payment card industry and Congress announced that they were working together to combat identity theft. A critical part of this joint effort was the truncation of personal data from credit and debit card receipts presented to consumers at the point of sale.

31. On March 6, 2003, Visa CEO Carl Pascarella held a joint press conference with Senators Judd Gregg, Jon Corzine, Patrick Leahy and Dianne Feinstein to announce Visa USA's new account truncation program to protect consumers from identity theft. At the press conference, Mr. Pascarella stated:

> "Today, I am proud to announce an additional measure to combat identity theft and protect consumers. Our new receipt truncation policy will soon limit cardholder information on receipts to the last four digits of their accounts. The card's expiration date will be eliminated from receipts altogether . . . .
>
> "The first phase of this new policy goes into effect July 1, 2003 for all new terminals. I would like to add, however, that even before this policy goes into effect, many merchants have already voluntarily begun truncating receipts, thanks to the groundwork that we began together several years ago.
>
> \*   \*   \*   \*
>
> "Visa USA is pleased to be working with Senator Feinstein, and the other senators here today in the fight to protect consumers from identity theft. After all, we share the same goals."

32. On July 9, 2003, L. Richard Fischer, presented a written statement to the United States House of Representatives Committee on Financial Services on behalf of Visa USA, Inc., supporting the truncation requirements of what ultimately became FACTA. Therein, Mr. Fischer stated:

> "Although Visa generally believes that the details of preventing identity theft should be left to financial institutions that are best suited to address ever evolving fraud techniques, Title II could

7

> provide important benefits to consumers and financial institutions alike by establishing workable identity theft provisions and ensuring that these provisions benefit from national uniformity. For example, Section 203 of Title II would prohibit any merchant or other entity that accepts credit and debit cards from printing more than the last four digits of the card account number or the expiration date upon receipts provided to cardholders at the point of sale . . . ."

33. Visa USA's agreements with the American merchants which accept Visa brand credit or debit cards are defined in part in a manual entitled Rules for Visa Merchants, Card Acceptance and Chargeback Management Guidelines ("Visa Merchant Rules"). The Visa Merchant Rules Manual includes a description of Visa's truncation requirements. For example, the 2006 edition of the Manual states:

> "Visa requires that all new electronic POS terminals provide account number truncation on transaction receipts. This means that only the last four digits of an account number should be printed on the customer's copy of the receipt.
>
> After July 1, 2006, the expiration date should not appear at all. Existing POS terminals must comply with these requirements by July 1, 2006 . . . . "

34. The truncation standards set forth in the Visa Merchant Rules, which are part of the contract between Visa and the merchants which accept its debit and/or credit cards, served as the basis for what ultimately became the truncation requirements of FACTA.

35. In addition, VISA and MasterCard are so determined to curb identity theft in connection with the use of credit and debit cards at the point of sale, that both companies impose in their agreements with their merchants, including the Defendant, the following penalties for failing to truncate credit card information:

> 1st Violation -   $5,000.
> 2nd Violation -  $10,000.
> 3rd Violation -  $25,000.
> 4th Violation -  $50,000.

8

    Willful or Egregious Violations - $500,000 per month.

 36. The Office of Thrift Supervision, United States Department of Treasury ("OTS"), is responsible, *inter alia*, for monitoring financial institution compliance with FACTA. Toward this end, the OTS publishes an Examination Handbook ("Handbook") which assists OTS field personnel when they perform an examination, or compliance audit, of a given financial institution. The February 2006 Edition of the Handbook states, in relevant part:

> *Truncation of Credit and Debit Card Account Numbers*
>
> Ensure that electronically generated receipts from ATM and POS terminals or other machines do not contain more than the last five digits of the card number and do not contain the expiration dates.

 37. FACTA's requirement that merchants truncate credit and debit card expiration dates was phased in over a three year period. During the three year phase-in period, there was extensive publicity regarding the law's requirements.

 38. Many restaurant and retail trade associations apprised their merchant members that FACTA requires truncation of the entire expiration date and all but the last five digits of the cardholder account number.

 39. For example, the cover-article in the Winter 2007 edition of Texas Business Today includes an extensive discussion of the truncation requirements of FACTA.

 40. In May 2007, the Federal Trade Commission published a widely circulated and extensively publicized FTC Business Alert which reiterated the truncation requirements of FACTA.

 41. Heartland Payment Systems, Inc. ("Heartland") provides credit and debit card, payroll and related processing services to over 137,000 retail merchants throughout the United

States. In 2003, Heartland broadly disseminated a pamphlet which included the following statement:

> "Your credit card terminal is now – or will soon be required by law or the bankcard associations to truncate – or limit – the information that can appear on electronically printed sales receipts. What that means is that on all cardholder numbers:
>
> ■ The expiration date must be eliminated
>
> ■ All but the last four numbers of the card number must be obscured.
>
> \*   \*   \*   \*"

42. In 2006, Heartland broadly disseminated a second pamphlet, which included the following statement:

> "**Make every transaction a safe one.**
>
> **\* \* \* \***
>
> ■ The cardholder's receipt *should not include* the card's expiration date and *should only include* the last 4 or 5 digits of the card number.
>
> \*   \*   \*   \*"

43. Many restaurant and retail trade associations apprised their merchant members that FACTA imposed truncation requirements mirroring Visa's truncation requirements. For example, the Virginia Retail Merchants Association reported in its February/March 2005 Newsletter that:

> "FACTA says receipts for credit and debit card transactions may not include more than the last five digits of the card number or expiration date."

44. In the April 23, 2003 edition of the monthly magazine for the National Association of Convenience Stores, the national trade association for Convenience and Petroleum Retailing, an article titled "Visa USA Targets Identity Theft," appeared and included the following language:

10

> "[A]t a press conference held last month with Sen. Dianne Feinstein (D-CA), Visa announced its account truncation security policy. This protects consumers from identity theft by limiting cardholders' information on receipts to the last four digits of their accounts. The policy will also eliminate the card's expiration date from receipts altogether. Feinstein has introduced legislation to combat identity theft."

45. The April 2005 edition of the Food Industry Advisor, the newsletter for the Pennsylvania Food Merchants Association and Pennsylvania Convenience Store Council, included an article regarding the requirements of credit card truncation under FACTA which included the following language:

> "[A]ccording to the FACT Act, `no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction. . . . .'"

46. This same article appeared in the April 2005 Edition of the NACS Magazine, published by the National Association of Convenience Stores.

47. The Independent Insurance Agents & Brokers of America circulated a report to its members dated June 5, 2005 titled: "Overview of the Fair Credit Reporting Act, The Fair and Accurate Credit Transactions Act, and the Drivers Privacy Protection Act." In relevant part, this publication stated:

> "Under the FACT Act, businesses and others accepting credit or debit cards for payment may not print more than the last five digits of the card number nor may they print the expiration date upon any receipt provided to the cardholder at the point of sale."

48. In the November 18, 2004, edition of the Compliance Challenge, published by the Credit Union National Association News, a report was published that included the following language:

11

> "FACTA prohibits anyone that accepts credit/debit cards to print more than the last 5 digits of the card number or expiration date on any receipt at the point of sale or transaction . . . ."

49. On June 3, 2008, House Bill HR 4008 (known as the so-called Credit and Debit Card Receipt Clarification Act of 2007, Pub.L. 110-241, §3(a), June 3, 2008, 122 Stat. 1566)(hereafter "Clarification Act") was signed into law by the President.

50. Specifically, Section 3(a) of the "Clarification Act" states, in relevant part:

> [F]or purposes of this section, any person who printed an expiration date on any receipt provided to a consumer cardholder at a point of sale or transaction between December 4, 2004 and the date of enactment of this subsection but otherwise complied with the requirements of Section 605(g) for such receipt shall not be in willful noncompliance with Section 605(g) by reason of printing such expiration date on the receipt.

51. Thus, the "Clarification Act" provided amnesty to those businesses which had been sued for violations of FACTA's prohibition against the printing of expiration dates on electronically printed receipts between December 4, 2004 and June 3, 2008 (in those instances when the civil action filed against the business was not yet "final"). However, the "Clarification Act" is inapplicable to any merchant that accepts payment by credit and debit cards and who violates the law by printing expiration dates from June 4, 2008 forward.

52. The passage of the "Clarification Act," however, was championed by the national Chamber of Commerce and added to the extensive amount of publicity regarding the requirements of FACTA.

53. In addition to the foregoing, effective January 1, 2004, New Jersey Statute § 56:11-42 prohibits all retail sales establishments to print electronically more than the last five digits of a customer's credit card account number or the expiration date of that credit card upon any sales receipt provided at the point of sale to the customer.

### *Defendant's Knowledge of FACTA's Truncation Requirements*

54. Prior to the transactions at issue, Defendant had actual knowledge of FACTA's truncation requirements, or acted recklessly with respect to FACTA's truncation requirements. Specifically, Defendant had knowledge of the requirement that credit and debit card expiration dates be truncated on receipts presented to consumers at the point of sale.

55. Upon information and belief, prior to the transactions at issue, Defendant has had agreements with various credit card issuers, including VISA, MasterCard, American Express and others, and those agreements apprised Defendant of its obligation to truncate credit and debit card account numbers and expiration dates.

56. Upon information and belief, prior to the transactions at issue, Defendant received periodic communications from credit card issuers advising Defendant of its obligation to truncate credit and debit card account numbers and expiration dates.

57. Upon information and belief, prior to the transactions at issue, Defendant received monthly statements from its merchant bank (or other similar entity that performed credit and debit card payment clearing services for Defendant) which apprised Defendant of its obligation to truncate credit and debit card account numbers and expiration dates.

58. Upon information and belief, prior to the transactions at issue, Defendant received written information from its POS (Point of Sale) provider(s) apprising Defendant of its obligation to truncate credit and debit card account numbers and expiration dates.

59. Upon information and belief, prior to the transactions at issue, Defendant received written notices, warnings and alerts pertaining to FACTA's truncation requirements in monthly statements by United States mail and/or by electronic mail from Defendant's merchant processing company.

60. Upon information and belief, prior to the transactions at issue, Defendant received information from trade associations and/or other similar entities apprising Defendant of its obligation to truncate credit and debit card account numbers and expiration dates.

61. Upon information and belief, Defendant's violations as stated herein, were not isolated incidents or accidental oversights. Defendant chose to ignore the new account concealment requirements on electronically printed receipts at the point of sale, because Defendant did not wish to incur the additional expense of reprogramming or updating its point-of-sale equipment.

62. Despite having direct notice of the requirements of FACTA, Defendant chose to ignore such notice and disregard the provisions of FACTA and continued to provide to the Plaintiffs, and those other class members similarly situated, electronically printed receipts which contained the expiration date of the credit/debit card accounts which was prohibited by FACTA. The disregard of these notices by the Defendant was willful and/or reckless and constitutes a willful violation under FACTA.

63. The foregoing acts and omission of Defendant, despite first having actual and constructive notice of FACTA's requirements, constitute willful violations of FACTA and thereby exposed Plaintiffs, and those other class members similarly situated to identity theft and credit/debit fraud that FACTA was specifically enacted to prevent.

64. Defendant is a sophisticated national retailer with over one-hundred locations throughout the United States of America.

65. Most of Defendant's business peers and competitors readily brought their credit card and debit card receipt printing process into compliance with FACTA by, for example, programming their card machines and devices to prevent them from printing more than the last

five digits of the card number and/or the expiration date upon the receipts provided to the cardholders. Defendant could have readily done the same.

66. Defendant, despite having several years to bring itself in compliance with FACTA, and having been notified in advance of and after FACTA became law, ignored this law which Congress intended to protect consumers against identity theft and credit/debit card fraud. Defendant's continued failure to comply with FACTA, thereby improperly subjecting its customers to identity theft and credit/debit card fraud, demonstrates Defendant's willful and/or reckless violation of § 1681c(g) with respect to the Plaintiffs and as to those class members similarly situated. Defendant acted with an unjustifiably high risk of harm that was either known or so obvious that it should have been known.

67. Defendant continued to provide such prohibited receipts well after FACTA became effective.

68. Defendant willfully and/or recklessly violated the FCRA.

69. As a result of Defendant's willful violations of the FCRA, it is liable to Plaintiffs and Class members pursuant to 15 U.S.C. § 1681n.

**WHEREFORE**, Plaintiffs, individually and on behalf of the putative Class, requests that this Court enter judgment in his favor and against Defendant and award the following:

    a. Declaring the suit may be maintained as a class action.

    b. The Plaintiff shall be designated as the Class representative and that Plaintiff of record be designated as Class counsel.

    c. Statutory damages pursuant to 15 U.S.C. § 1681n;

    d. Attorney's fees, litigation expenses, and costs pursuant to 15 U.S.C. §

11681n; and

e. Such further relief as this Court deems just and proper.

**Plaintiffs Demand a Trial by Jury**

Dated: January 28, 2015

Cohn Lifland Pearlman Herrmann & Knopf LLP

BY: /s/ *Jeffrey W. Herrmann*
Jeffrey W. Herrmann
Park 80 West-Plaza One
250 Pehle Ave., Suite 401
Saddle Brook, NJ  07663
Telephone:  201/845-9600
201/845-9423 (fax)
jwh@njlawfirm.com

ND&S  NICOLL DAVIS & SPINELLA LLP
95 Route 17 South, Suite 316
Paramus, New Jersey 07652
(201) 712-1616
Attorneys for Plaintiffs